## TOWER HILL CONNELLSVILLE COKE CO. OF WEST VIRGINIA v. PIEDMONT COAL CO. et al.

Circuit Court of Appeals, Fourth Circuit. July 8, 1929.

No. 2846.

Thomas Watson, of Pittsburgh, Pa., and E. W. Knight, of Charleston, W. Va. (Lon H. Kelly, of Charleston, W. Va., and M. W. Acheson, Jr., and Robert M. Steffler, both of Pittsburgh, Pa., on the brief), for appellant and cross-appellee.

E. C. Higbee, of Uniontown, Pa., and William M. Robinson and Edwin W. Smith, both of Pittsburgh, Pa. (Arthur S. Dayton, of Charleston, W. Va., on the brief), for appellees and cross-appellants.

Before PARKER and NORTHCOTT, Circuit Judges, and WEBB, District Judge.

NORTHCOTT, Circuit Judge. This is a suit in equity brought in the District Court of the United States for the Southern District of West Virginia by the Piedmont Coal Company, a corporation created and existing under the laws of the commonwealth of Pennsylvania, and G. S. Harah, Edgar S. Hackney, and Walter E. Hess, executor under the last will and testament of John E. Hess, deceased, the three individual plaintiffs being citizens of said commonwealth, against the Tower Hill Connellsville Coke Company of West Virginia, a West Virginia corporation, that will be hereinafter referred to as the Tower Hill of West Virginia. The stock of the defendant company consisted of 15,000 shares of preferred stock of the par value of $100 each, and 40,000 shares of common stock of the par value of $100 each.

The plaintiffs, at the time of the institution of this suit, were the owners of a total of 10,850 shares of the preferred stock, of which there was then outstanding 13,247 shares; 1,753 shares having been purchased for various prices, and canceled by the defendant. The preferred stock under the law of West Virginia and the provisions of the certificate of incorporation was entitled, in preference to the common stock, to cumulative dividends at the rate of 6 per centum yearly, payable quarterly, half yearly, or annually; that is to say, dividends might be paid on the common stock only out of the excess earnings over and above the amount necessary to pay 6 per centum on the fiscal year, and any arrearages of dividends upon the preferred stock. When this amount had been earned and paid, or earned and set aside for this purpose, then out of the excess dividends might be paid upon the common stock, when and as the board of directors should determine.

The preferred stock also has a preference over the common stock in any distribution of assets other than profits, until the full par value thereof and 6 per centum per annum thereon from the time of issue should have been paid by dividends or distribution.

The preferred stock had the right to vote, and was not to receive any dividends from profits in excess of said 6 per centum per annum, nor any share in the distribution of assets in excess of said par value and the amount then unpaid of such cumulative dividends; but the common stock alone was to receive all further dividends and shares in distribution.

The certificate of incorporation provided that:

"The corporation shall not be at liberty, without the consent in writing first obtained of the holders of two thirds in amount of the preferred stock issued and outstanding:

"(a) To create or issue any other or further shares ranking in any respect pari passu with or in priority to the aforesaid issue of one million, five hundred thousand dollars, par value, of preference shares.

"(b) Nor to create any charge except as hereinafter provided upon the net profits of the corporation which shall be detrimental to the rights of the preference shares.

"(c) Nor to reserve a surplus fund which shall not be chargeable with the payment of the accrued dividends upon the preference shares."

The assets of the defendant company consisted solely of all the stock of the Tower Hill Connellsville Coke Company of Pennsylvania, a Pennsylvania corporation, hereinafter referred to as the Tower Hill of Pennsylvania, consisting of 50 shares of the par value of $100 each of common stock. The Tower Hill of West Virginia was a holding company, and conducted no operation, owned no plant, and did no business other than that connected with its ownership of the stock of the Tower Hill of Pennsylvania. The Tower Hill of Pennsylvania conducted a large coal and coke operation, in the state of Pennsylvania, where it owns a large acreage of coal and operates a coal mine and coking plant. There was originally an issue of bonds which constituted a mortgage on property of the Pennsylvania company, amounting to $2,500,000, of which $384,000 remain unpaid. The directorate of the West Virginia and the Pennsylvania companies was identical, and the principal officers were the same for both.

The Tower Hill of Pennsylvania was incorporated on the 2d day of February, 1906, and the Tower Hill of West Virginia was incorporated on the 21st day of January, 1907. The Tower Hill of Pennsylvania originally owned approximately 2,000 acres of coal and 183 acres of surface, for which was paid $500,000 cash, $1,000,000 of the first mortgage bonds, and the entire capital stock, which capital stock was afterwards transferred to Tower Hill of West Virginia, for the entire issue of both common and preferred stock of that company.

In 1907, the Tower Hill of Pennsylvania divided said properties into mines No. 1 and No. 2, and opened the same for the removal of coal, constructed tipples and equipment at each mine, and built coke plants for the manufacture of coke, and on January 1, 1920, the cost to said company of the plants and equipment for both mines was $2,624,-476.31.

In the year 1920, Tower Hill of Pennsylvania sold mine No. 1, together with 560 acres of coal land.

With the exception of a dividend of 9 per cent. paid in the year 1924, no dividends have been paid on the preferred stock of the defendant, so that, at the time of the entry of the decree below, dividends on the preferred stock were in default to the amount of more than 120 per cent. of the par value. These deferred dividends bear no interest.

No meeting of the directors of the defendant company was held from May 3, 1920, up to the date of the submission of the suit in the court below in May, 1926.

Plaintiffs brought this suit and filed their bill, charging, among other things, that there was mismanagement in the affairs of the two companies, and that an effort was being made to manipulate them in the interest of the holders of the common stock of Tower Hill of West Virginia, and to the detriment of the holders of the preferred stock; that the officers and directors proposed a certain merger, greatly to the disadvantage of the preferred stockholders; that there were ample funds in the assets of Tower Hill of Pennsylvania to pay at least a part of the passed dividends; and that such payments were not made with the deliberate purpose of lowering the value of the preferred stock. The bill, among other things, prayed for the appointment of a receiver to take charge of the assets of the defendant, with power to exercise all the rights, privileges, and remedies of the defendant company, with respect to the matters set out in the bill, and with the right to bring such suit or suits in Pennsylvania as

might be necessary to protect the interests of the holders of the preferred stock.

The defendant filed its answer, denying all charges of fraud and mismanagement, and setting up the claim that the free liquid assets in the hands of Tower Hill of Pennsylvania were not more than sufficient to provide reserve for federal taxes, working capital, accidents, bad debts, and the completion of electrification of the mine which was in progress, and the modernizing of the plant by substituting by-product coke ovens for the company's beehive ovens, and for other needed betterments, and to meet the operating losses under which business was being conducted at the time of the suit. The answer averred that the payment of the dividends on the preferred stock would impair the capital of Tower Hill of Pennsylvania.

Evidence was taken, a large number of exhibits were filed, and on April 5, 1928, the learned judge below filed a memorandum decision, which concluded as follows:

"It seems to me that these preference shares created under the law of the state of incorporation, and under the terms of the certificate (which is a contract) are entitled to some real consideration and relief herein.

"I will not undertake to analyze the figures as to the assets of the Pennsylvania Company, but I hold that there seems to be sufficient available funds to pay a dividend of twenty dollars on each share of preferred stock of the West Virginia Company, and that the Pennsylvania Company should pay to the West Virginia Company, sufficient dividends to enable it to declare and pay such sums as dividends upon the preferred stock.

"If the management of these companies does not within thirty days take reasonable steps to do this, then a decree will be entered, appointing a receiver, or receivers of the defendant company in this suit, and appropriate authority will be given to such receivers, to do things necessary and proper to collect such sums as may be required to pay such amount of money as a part of the cumulative dividends aforesaid."

After this decision, no decree having been entered in the meantime, attorneys presented and asked leave to file a motion to dismiss the bill, for the reasons, among others, that there was no substantial defendant to the suit, that the directors and officers of the defendant were necessary and indispensable parties to the suit, and that all of them were residents of the state of Pennsylvania, as were the plaintiffs, and that making them parties would deprive the court of jurisdiction, because of a lack of diversity of citizenship.

On April 30, 1928, an order was entered reciting the various steps taken and various appearances made by defendant's attorneys, together with the dates thereof, and sustaining the objections to the filing of the motion to dismiss, and refusing to entertain said motion. On May 11, 1928, a final decree was entered reciting the fact that no steps had been taken to pay the $20 per share dividends, as required in the opinion of the court, and appointing receivers with power to take charge of all of the assets of the defendant company, and to prosecute such suits and take such steps as were necessary "to effectuate the purposes" of the memorandum decision and the decree, and cause to be paid such dividends on the preferred stock as were properly payable. The decree provided that, in the event of an appeal to this court, the appointment of the receivers, if the decree should be affirmed, was not to become effective, if, within 30 days after the mandate of this court should be sent down, payment were made of the $20 dividend per share of preferred stock referred to in the memorandum decision.

From this decree defendant appealed, and the plaintiffs filed a cross-appeal.

█ The first question to be considered is the one raised by the motion to dismiss for want of necessary and indispensable parties.

It is strongly contended on behalf of the plaintiffs that this motion came too late. We do not think so. The decree of the court below, denying the motion, recites various steps taken and various appearances made by the attorneys of Tower Hill of West Virginia prior to the making of the motion, and we have a great deal of sympathy with the evident disapproval by the learned judge below of the course taken by attorneys for the defendant, in making this motion only after a long and tedious trial, and after the court below had held against them, when they evidently had the question of jurisdiction in mind long before the making of the motion. It has, however, long been settled in the federal courts that the question of jurisdiction may be raised at any stage of the proceedings, and will be passed on by the court of its own motion whenever it comes to its attention. It is firmly established by the decisions that in any case pending in an appellate federal court of the United States, the inquiry must always be whether that court or the court below has the jurisdiction. The leading case on this subject is Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U. S. 379, 4 S. Ct. 510, 28 L. Ed. 462, where Justice Matthews, speaking for the court, says:

"* * * On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it."

It is not necessary to cite the numerous authorities following this decision, and we know of no authority to the contrary.

On consideration of the question whether there are any indispensable parties who have not been made parties to this action, it is apparent that, if the court below, by its final decree, seeks to direct or in any way to control the management of the Tower Hill of Pennsylvania, that company as well as its officers and directors would be necessary and indispensable parties. It follows that any effort on the part of the court below to direct the payment of any specific dividends by the Tower Hill of Pennsylvania would be an effort to control the management of that company, and could not be done without making its officers and directors parties. Swan Land & Cattle Co. v. Joseph Frank et al., 148 U. S. 603, 13 S. Ct. 691, 37 L. Ed. 577; Venner v. Great Northern Ry. Co., 209 U. S. 24, 28 S. Ct. 328, 52 L. Ed. 666.

A careful search of the authorities fails to disclose any decision holding that, when corporate action, with regard to the payment of the dividends, is sought to be ordered by the court, the corporation, out of whose funds the dividends are paid, is not an indispensable party.

For the same reason it is apparent that, if the court below undertakes to appoint a receiver to take charge of all the assets of the Tower Hill of West Virginia, which assets consist solely of all the common stock of the Tower Hill of Pennsylvania, such appointment would virtually constitute taking possession of the Tower Hill of Pennsylvania, and would at least result in giving the receiver control of the management of that company, and again the Tower Hill of Pennsylvania becomes an indispensable party to the suit. The making of the Tower Hill of Pennsylvania, or any of its officers and directors, parties, would of course defeat the jurisdiction of the court below.

The learned judge below found that the plaintiffs as holders of preferred stock of Tower Hill of West Virginia were entitled to "some real consideration and relief herein." After careful study of the record in the case, we fail to see how he could have reached any other conclusion. Two main facts, among

others, lead to the inevitable conclusion that the plaintiffs were not being fairly treated, and that such treatment, if not actually amounting to actual fraud, at least constituted fraud in law. The purchase at a very low price, and the retirement of a considerable amount of the preferred stock of the par value of $175,300, while dividends on the preferred stock were greatly in default, is most significant. If the Tower Hill of West Virginia had funds available with which to purchase this preferred stock, such funds were certainly available to pay the dividends due on the preferred stock and the purchase of preferred stock at a price below its actual worth, and its cancellation could only inure to the benefit of the holders of common stock of the Tower Hill of West Virginia, and could in no way benefit the holders of the preferred stock. The record shows that, should the Tower Hill of Pennsylvania go into liquidation, there would be ample assets to pay all its debts and the preferred stockholders in full, including deferred dividends. A large sum in cash and liquid assets had been accumulated by the Tower Hill of Pennsylvania.

The second fact, that speaks so eloquently of the improper manner in which these companies have been handled in respect to finance, is the contention on the part of defendant that all the money and assets of the Tower Hill of Pennsylvania, together with a large additional sum to be borrowed, are necessary for the rehabilitation and reconstruction of the plant so that it may be modernized. Such a course, if successfully pursued, could in no way benefit the holders of the preferred stock, as any excess profit resulting would go solely to the benefit of the holders of the common stock. The holders of the preferred stock now have ample assets to fully protect them. If the modernized plant should not be a success, these assets would be depreciated and dissipated. Should it be a success, only the common stock would be benefited. This policy is clearly unfair to the holders of the preferred stock, and should not be pursued without the consent of all of them.

In view of the facts disclosed by the record and found by the court below, it would be indeed strange if the plaintiffs were not given some adequate relief. If equity is compelled to stand helpless before the situation disclosed here, then equity would be indeed impotent.

In the case involving a somewhat similar situation (Krouse v. Brevard Tannin Co., 249 F. 538), this court has already spoken as to the principles here involved, and Judge Connor, in speaking on behalf of the court, has so clearly discussed these questions that we feel it proper to quote from his decision at length. Judge Connor said in part:

"It is said, however, that Edward D. Adams and George L. Adams are indispensable parties defendant, and that, if brought into the case as defendants, the jurisdiction of the court would be ousted. While, as provided by rule 29 (198 F. xxvi, 115 C. C. A. xxvi), the motion to dismiss may be made for nonjoinder of essential parties, the practice of courts suggest, not a decree dismissing the bill, but an order to make such parties. It is insisted that this would not help the complainants, because, as George L. Adams is a citizen and resident of Pennsylvania, the residence of complainants upon being brought into the record, a case would be created wherein complainants and one of the defendants are citizens and residents of the same state. Rule 39 (198 F. xxix, 115 C. C. A. xxix; Hopkins, New Fed. Eq. Rule 204) provides that:

" 'In all cases where it shall appear to the court that persons who might otherwise be deemed proper parties to the suit cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to parties before the court, the court may, in its discretion, proceed in the cause without making such persons parties; and in such case the decree shall be without prejudice to the rights of the absent parties.'

"See, also, Judicial Code, § 50 [28 USCA § 111].

"Are Edward D. Adams and Geo. L. Adams necessary, or indispensable, or only proper, parties? For an interesting discussion and analysis of decided cases regarding this question, which has given to federal courts much concern, see Street's Fed. Eq. Prac. vol. 1, § 502 et seq. It may be conceded that, if Edward D. and George L. Adams are indispensable parties, within the definition found in well-considered opinions of the Supreme Court, the bill must be dismissed. It is not within the saving provisions of equity rule 39, or section 50 of the Code. The corporation is a party defendant, served with process on its secretary and treasurer, and one of the directors, Wm. F. Decker, individually, also is a party. It is insisted that, because the other two directors, nonresidents, who have wilfully and negligently failed to discharge their manifest duties as directors, and have either knowingly or

fraudulently permitted its managing officer to make contracts in fraud of, and prejudicial to, its property and interests, and embezzle its funds, are not made parties because service cannot be had on them, the court had no power to make any decree for the protection of the property or the rights of the shareholders. We are unable to perceive why, with the corporation and its managing director, secretary, and treasurer, under whose control the property is found, as parties to the suit, a decree may not be made appointing a receiver of the property, with direction that he bring such actions, or suits in equity, against the directors, or other persons, as may be necessary to protect its interests. Whether in this suit decrees may be made, regarding the transactions set out in the bill of which plaintiffs complain, in the absence of Edward D. and George L. Adams, is not necessary to decide. If the court has before it the necessary parties to enable it to grant any substantial relief, the bill should not be dismissed. While it is true that, in the absence of George L. Adams, a decree cannot be made giving relief to the company for the wrong sustained on account of the matters alleged in regard to the contract made with Louis Carr, and alleged to have been assigned to Geo. L. Adams, pursuant to a fraudulent agreement between Edward D. Adams, Geo. L. Adams, and W. F. Decker, the fact that the contract was made and assigned to Geo. L. Adams, under the circumstances alleged, establishes for the purpose of this suit a valuable property right in the company, which should be protected, and enforced in some appropriate manner by this court, or through its receiver. The purpose for which the intervention of the court is invoked in this suit is not necessarily that decrees be made herein, respecting such transaction, of which complaint is made, but that full and complete relief be afforded to the corporation against the frauds, neglects, and wrongdoings—breaches of duty—of its directors and officers. This is not a case in which the title to the corporate property is vested in the directors, and it is sought to affect it—transfer title or otherwise. The property, rights of action, and remedies for wrongs sustained by the corporation are vested in the corporate entity, which is unable to assert or enforce them or protect its property, by reason of the antagonistic relation assumed by its officers and directors."

After citing numerous authorities, Judge Connor continues:

"The plaintiff alleges that, by reason of the fraudulent and wrongful conduct of its majority stockholders and managing officers, the corporate property has been dissipated and its business prejudiced; that rights of action have accrued to the corporation against such officers. These transactions are set forth in the bill and admitted for the purposes of this discussion. The bill further charges that the president, directors, and secretary and treasurer, whose duty it is to prosecute such actions as may be necessary to protect the rights of the corporation, occupy in respect to such transactions antagonistic relations to the corporation and its rights. It so happens that the suit to redress the wrongs and enforce the rights of the corporation must be brought against those whose duty it is to bring and prosecute them to judgment. The plaintiffs bring the corporation and one of the managing officers before the court, and seek such relief as it may be in its power to grant. They challenge the power of the court to grant any relief, and demand that, in the face of the allegations in the bill, admitted to be true, the suit be dismissed because two other persons, also directors, who are beyond the jurisdiction of the court, are not made parties, and that if made parties, by reason of the place of their residence, the court would be without jurisdiction to proceed. Conceding that, without their presence, or the presence of Geo. L. Adams, full and complete relief in respect to one of the transactions of which complaint is made, cannot be granted, we do not perceive any valid reason why, with the corporation before the court, it may not proceed to investigate the truth of the allegations of the bill for the purpose of ascertaining whether any relief may be granted. If it shall appear that the corporation has sustained injury by the conduct of its officers, why may not a receiver be appointed, with direction to institute such suits in equity or actions at law as may be necessary to protect the interests and enforce the rights of the corporation? For that purpose we are of opinion the court has before it the essential necessary parties. The decree would not prejudice the right of the nonresident persons, in such actions, to deny and demand proof of the allegations against them. In dismissing the bill for nonjoinder of these parties there was error."

It is true that in the Krouse Case one of the directors of the company was a defendant, but two were not, and jurisdiction to appoint a receiver was not made to depend on the fact that one of the directors was a party.

It is contended that the plaintiffs had an adequate remedy in the courts of Pennsylvania, but it is a doubtful question whether

Tower Hill of West Virginia could be reached by any action in the Pennsylvania court. We cannot see what harm would be done to any of the parties by the appointment of a receiver, with power only to go into the proper courts in Pennsylvania, and there present the entire situation with all its various complications. Certainly enough has been proven by the plaintiffs to not only justify but demand such action. In appointing a receiver with such limited powers, we are of the opinion that the Tower Hill of West Virginia is the only necessary and indispensable party.

The action of the court below, so far as it undertook to compel the payment of any specific dividends on the preferred stock, and so far as it gave the receivers appointed power to take charge of the assets of the Tower Hill of West Virginia, was wrong, but, as to the appointment by the court of these receivers with authority to go into the courts of Pennsylvania and bring all necessary and proper actions to protect the interests of the plaintiffs, it was proper. The decree below will be modified in accordance with this opinion.

After the case had been argued and submitted, and after the foregoing opinion had been prepared, our attention was called to an Act of the Pennsylvania Legislature, effective May 17, 1929, which authorizes suit in the courts of Pennsylvania by the holders of one-fifth of the stock of a foreign holding corporation which in turn owns all of the stock of a corporation of Pennsylvania "to investigate and inquire into the affairs, management and operations of such domestic corporation." This act, however, has not as yet been construed by the courts of Pennsylvania, and, if construed as authorizing suit by complainants here against the Tower Hill of Pennsylvania, it would manifestly not afford ground for suit in the federal courts of that state, which could be maintained by the Tower Hill of West Virginia, or its receiver. Moreover, we do not think that an act of a state Legislature can deprive the minority stockholders of a corporation foreign to that state of the right to sue such corporation in a proper case, in the state where chartered. We think, therefore, that the right to have a receiver appointed for the Tower Hill of West Virginia for the limited purpose of instituting suit remains notwithstanding the enactment of the statute. Certainly, in view of the history of this litigation, the suit should not be dismissed because a statute passed at the eleventh hour may possibly enable complainants to obtain in the state court the relief to which we have held that they are entitled on their bill.

Modified.