MAUDE C. OCHS, Plaintiff, *v.* DAVID MAYDOLE HAMMER COMPANY and Others, Defendants.

Supreme Court, Chenango County, December 26, 1930.

*John C. Smith,* for the plaintiff.

*H. C. Stratton* [*J. M. Forsythe* of counsel], for the defendants.

SENN, J. The David Maydole Hammer Company was incorporated many years ago and long before the rights of the plaintiff accrued. Its original capital stock was and still is $80,000 divided into 80 shares of $1,000 each. Its office and factory are at Norwich, N. Y. The Maydole hammer had long maintained an enviable reputation upon which its makers were enabled to largely profit and it is still well and favorably known , but in recent years other hammers of good quality have come into the market and made it increasingly difficult to meet the competition.

On April 8, 1908, May Campbell, plaintiff's foster mother, being then the owner of twenty shares of this stock, died leaving a will in which she bequeathed to the plaintiff during her lifetime the income and dividends thereof, and after her decease the stock was given absolutely to the three defendants, Jennie Newton, Caroline Higley and May D. Parker. These three then were and still are the owners of one-half of the stock of the corporation, that is, each owned one-sixth, the remaining twenty shares being owned since about the year 1926 by Jane M. Newton, a daughter of the defendant Jennie Newton.

The three individual defendants are and since 1908 have been the controlling directors of the corporation, and they are the ones who will eventually own the twenty shares of which plaintiff has the dividends

The complaint charges that these defendants being so in control and with intent to build up a large surplus which under the circumstances would profit them but would not benefit the plaintiff, have withheld making dividends in such sums as the business would warrant and have permitted large sums, which should have been paid out as dividends, to accumulate as surplus.

I have carefully examined the figures and data submitted and fail to find that this very serious charge has been sustained. It is true that there are figures which, considered alone, would challenge scrutiny. For instance (I speak in round numbers), in the year 1908 there was a surplus of $148,000 and in 1929 this had grown to $263,000, an increase of $115,000. It could be argued that this should have been distributed as dividends, of which the plaintiff would have received one-fourth, or $28,750. But an examination of all the figures and data shows the fallacy of this reasoning.

Taking the years from 1908 to date, it appears that the surplus gradually increased, with fluctuations and some recessions, until in 1921 it had reached a total of $459,000, after which it gradually decreased, with fluctuations and some increases, to the sum stated. If the plaintiff's rights to dividends had accrued in the year 1921, it could with equal force have been argued that excess dividends to the amount of $196,000 had been paid out. By the same logic plaintiff could have complained in 1921 (the evidence is that she did not complain) that of the $459,000 surplus the sum of $311,000 had been wrongfully accumulated. It may be noted, too, that the surplus of $148,000 reported in 1908 had accumulated under practically the same management before plaintiff's rights began and could not have been acquired with any intent to wrong her.

If the various sums stated as surplus had been cash, a different

question would have been presented. The fact is that they represented mostly such items as machinery, equipment, buildings, hammers finished and in process, raw material, fuel, bills receivable, etc. In the very nature of things the quantity and value of these items shifted at various times and in varying amounts. The amount of cash on hand was usually small, or if large, as in 1923, it was only temporary for the payment of bills. Many years the bills payable exceeded the cash. There was never a real substantial cash surplus.

In a table covering the time from 1907–1929, inclusive, I find that in three of the years there was a loss of $108,000, and in the other years a profit of $816,000, a net profit of $708,000. During that time the dividends amounted to $586,000, or about eighty-two per cent of the profits. In the year 1911 about $17,000 had to be expended for new buildings made necessary on account of the old buildings having become obsolete. In 1923 the power plant had to be reconstructed and replaced at a cost of about $54,000. Other physical changes were going on in the natural course of things and no depreciation fund has ever been set aside. The three individual defendants gave their time and labor to the business without compensation.

It is unnecessary to particularize further. It is very evident that all the dividends which the business would bear have been made, uninfluenced by the fact that the three individual defendants have an interest in any surplus there may be and the plaintiff would not profit thereby.

It is a rule of law too well settled to require any extended citation of authorities, that in the matter of making or withholding dividends, the directors of a corporation are vested by law with a considerable range of discretion, uncontrollable by the courts, " unless the powers have been illegally or unconscientiously executed, or unless it be made to appear that the acts were fraudulent or collusive and destructive of the rights of the stockholders." (*Leslie* v. *Lorillard*, 110 N. Y. 519, 532.)

The same doctrine is held in other cases cited by the defendants.

Plaintiff cites *Hiscock* v. *Lacy* (9 Misc. 578) where Judge VANN wrote a very able and exhaustive opinion, citing the cases wherein it has been held that the courts could and where they could not interfere as between stockholders and directors, in cases where it was claimed that money which should have been paid out as dividends had been withheld or misapplied.

The action was against the Third National Bank of Syracuse and its directors to compel the payment of dividends which it was alleged had been suspended for five years, in bad faith and for the

purpose of oppressing an odious minority formerly in control and to obtain an indirect pecuniary advantage to the then controlling stockholders, by way of excessive salaries and liberal loans.

According to the findings of Judge VANN the evidence was ample to sustain the charge that although there was a large cash surplus, the dividends were not only corruptly but maliciously withheld at the behest of one individual stockholder who controlled a majority of the stock, and through that, the election and policies of the directors and officers of the bank; that this policy was aimed at and intended to injure the plaintiff, to punish him for his former criticisms of the one now in control and for his attempts to take the control of the bank from him.

There is nothing in the present case at all parallel to the *Hiscock* case.

If the plaintiff was just a stockholder, she would have no standing in this court whatever and the complaint would have to be dismissed, with costs. But the case is somewhat unique in that her direct interest is in the dividends only. She has no financial interest in a surplus except as that surplus may have a tendency to produce more dividends. Her situation entitles her to hold the directors to a stricter accountability to her than if she was a stockholder, entitled to share in the surplus in case of liquidation or future disposition. I feel that she had a right to bring this action for an accounting and that this is in fact such an action despite some of the unwarrantably drastic allegations of the complaint. The dividends were declared without any definite system. Sometimes they were larger after a year of small profits than after a year of large profits. An examination of the schedules of profits and dividends shows that there was no rule as to the proportion of the one to the other. On the trial, in answer to a question of the court as to the process by which, at directors' meetings the amount of dividends was determined, the witness Merton G. Ferris, manager, replied: " Largely just how they happen to feel that day. If they had the money and didn't need it just then."

Defendants have raised the question of the Statute of Limitations. If I am right in my conclusion as to the merits of the case the Statute of Limitations is immaterial. If the plaintiff was suing for dividends claimed to be due in the separate years, the statute would apply. But the theory on which she sues is that the whole of the surplus acquired after 1908 was accumulated pursuant to a design to deprive her of dividends so that the individual defendants might gain by the resulting surplus. It would of course be impossible, if her claim was true, to decide just how much should have been paid her in the separate years. It was necessary to consider

the acts of the directors and the condition of the business for the whole period in order to determine whether a dividend should be ordered now. Therefore, I do not see how the Statute of Limitations could apply in any event.

Within a few days the plaintiff's attorney has filed with me a supplemental brief in which it is stated that the defendants have sold the factory for $400,000, and that no dividend has been declared since the trial in January, 1930, etc. It may be that the sale of the factory constitutes a liquidation of the affairs of the corporation defendant and that the plaintiff is entitled to share in some of the surplus which made this sale possible, but all of the facts stated have accrued since the trial of this action, they are not in evidence and no part of the record herein. Any determination made by me must be without prejudice to any rights which have accrued to the plaintiff since the commencement of this action.

Although I have signed findings which absolutely exonerate the defendants, I have, on the grounds stated, decided that I should award costs to the plaintiff. This, under section 1477 of the Civil Practice Act, I have power to do. (See, also, *Osborn* v. *Cardeza*, 208 N. Y. 131, 134.)

In *Garvey* v. *Owens* (12 N. Y. Supp. 349) the action was for an accounting by persons acting in a trust capacity, and it was held error to award costs to the defendants although a small balance was found to be due them, it appearing that an accounting was necessary in order to settle the rights of the parties.

In *Abell* v. *Bradner* (15 N. Y. Supp. 64), where plaintiffs brought an action for the determination of their interest in certain real estate, and it was found that they had none, by reason of incumbrances on the property far beyond its value, it was held that the award of taxable costs was in the discretion of the court; that although this discretion is subject to review on appeal, it is not often interfered with and never, unless it plainly appears that the award is in violation of the equity of the case. An allowance of statutory costs to the plaintiffs was upheld on the ground that the action was properly brought and the defendants' accounts properly inquired into, although, after such inquiry, plaintiffs were not otherwise entitled to any judgment in their favor.

This action must be dismissed, but the plaintiff is entitled to her taxable costs which are hereby allowed her.

Let judgment be entered accordingly.