Oscar L. ALTMAN et al., Plaintiffs,

v.

CENTRAL OF GEORGIA RAILWAY
COMPANY et al., Defendants.

Civ. A. No. 547–65.

United States District Court
District of Columbia.

Sept. 29, 1965.

Victor A. Altman, Washington, D. C., for plaintiffs.

Gerhard A. Gesell, Bingham B. Leverich and Covington & Burling, Washington, D. C., John B. Miller and Hitch, Miller, Beckmann & Simpson, Savannah, Ga., for defendants Central of Georgia Ry. Co. and D. W. Brosnan.

ROBINSON, District Judge.

This is a class action brought by two owners of shares of the preferred stock of a foreign corporation seeking an order compelling the declaration and payment of dividends thereon for four past years, and directing a good faith determination of dividend policy for future years.

One of the plaintiffs is a citizen of the District of Columbia, and the other a citizen of New Jersey. Defendant Central of Georgia Railway Company (Central) is a Georgia corporation maintaining an office in the District, and the remaining defendants are the members of its board of directors.[1] Preferred stockholders, under Central's charter, are entitled to receive annual fixed percentage dividends out of and to the extent of available net income, and unpaid dividends are cumulative to a specified maximum.

In 1963, Southern Railway Company[2] (Southern) became the owner of nearly all[3] of Central's combined common and preferred stock in consequence of activities for its acquisition extending from 1960. Subsequently, Central and Southern, though remaining separate corporations, combined substantial portions of their operations with a view to improvements in their services and the realization of economies for both companies.

---

1. Only one of the individual defendants has been served.

2. Southern is a Virginia corporation. Its principal place of business is alleged to be in the District of Columbia.

3. It currently owns 96.22% of the combined common and preferred shares of Central's stock.

Central has not paid any dividends on its preferred stock for four years, 1960 through 1963. The plaintiffs claim that it had net income available for payment of such dividends during each of these years, and that its directors acted arbitrarily in refusing to do so.

The defendants moved to dismiss the action, after which the plaintiff asked leave to join Southern as an additional party defendant. It is to these motions, and the grounds respectively asserted in their support, that the Court now addresses itself, altering the chronological order of the motions and the grounds somewhat to facilitate discussion.

## I

Although the plaintiffs seek to compel the declaration of corporate dividends, only one of Central's 21 directors resides and has been served within the District of Columbia. From aught that appears, it is improbable that personal jurisdiction can be acquired over any of the rest. Deeming a quorum of the directors [4] to be parties indispensable to this action, the defendants urge that the Court cannot proceed.

The question is one of first impression here, and divergent results have been reached elsewhere. In Schuckman v. Rubenstein,[5] judicial authority was considered to be "limited to a judgment in personam [6] against the members of the board," [7] and it was accordingly held that "[j]urisdiction over only two of the nine

directors in this case made it impossible for the court to render an effective decree. At least three other directors were indispensible parties to the suit." [8] Similarly, in Tower Hill Connellsville Coke Co. v. Piedmont Coal Co.,[9] it was concluded that "any effort on the part of the court below to direct the payment of any specific dividends * * * would be an effort to control the management of that company, and could not be done without making its officers and directors parties." [10]

On the other hand, in Kroese v. General Steel Castings Corp.,[11] where the suit involved only three of twelve corporate directors, the Court, disputing that "the case is as easily settled as the mechanical application of this well-settled rule about jurisdiction in personam would settle it," [12] pointed out that "when a court steps in and orders the payment of a dividend, the corporate affairs have reached the point where the judgment of the directors is no longer controlling. The set of facts presented is such that the court substitutes its judgment, based on a rule of law, for the ordinary business judgment of those in charge of the business enterprise." [13] Consequently, said the Court, "[i]n such a case, even though individual directors are joined as parties, they are not called upon to exercise any business discretion. The case has passed that point. * * * The duty of a corporation to pay dividends then and there has been imposed by

4. This is predicated upon the general propposition that dividends can be declared only by majority vote of a quorum of directors. Central's by-laws, fully binding on its stockholders, see Gwin v. Thunderbird Motor Hotels, 216 Ga. 652, 119 S.E. 2d 14 (1961), fix a quorum of its board of directors at six.

5. 164 F.2d 952 (6th Cir. 1947), cert. denied 333 U.S. 875, 68 S.Ct. 905, 92 L. Ed. 1151 (1948).

6. "The declaration of a dividend is largely a matter of discretion with the board of directors and there will be no interference by the courts with the board's decision unless this discretion has been wilfully abused or the directors have been guilty of bad faith or a neglect of

duty. The court itself can not declare a dividend; its power is limited to a judgment in personam against the members of the board." 164 F.2d at 957.

7. 164 F.2d at 957.

8. Ibid.

9. 33 F.2d 703 (4th Cir. 1929), cert. denied 280 U.S. 607, 50 S.Ct. 157, 74 L.Ed. 650 (1929).

10. Id. at 706.

11. 179 F.2d 760, 15 A.L.R.2d 1117 (3d Cir. 1950), cert. denied 339 U.S. 983, 70 S.Ct. 1026, 94 L.Ed. 1386 (1950).

12. 179 F.2d at 763.

13. Ibid.

the judgment of the court, not by the ayes and nays of the members of the board," [14] and since the corporation had assets within the Court's jurisdiction, it perceived no difficulty in making its decree effective. In similar fashion, it was held in Doherty v. Mutual Warehouse Co.,[15] that since "[t]he corporation is the party from whom any dividends that may be declared must be recovered," [16] "the district court has jurisdiction to compel the declaration of dividends even in the absence of a majority of the board of directors." [17]

■ The views last expressed find additional support in other decisions,[18] and in commentaries on the question,[19] and they are adopted here. The corporation is already before the Court, and despite the fact that it owns no property in this jurisdiction, an effective and enforceable decree can yet be made. "To doubt its effectiveness is to doubt the power of a court of equity when wielded by a chancellor with legal imagination. * * * Equity courts have known for a long time how to impose onerous alternatives at home to the performance of affirmative acts abroad as a means of getting those affirmative acts accomplished." [20]

## II

As ground for their motion for leave to add Southern as a party defendant, the plaintiffs point to the size of its stock ownership and from this argue that it "is in effective control of" Central and has caused Central "arbitrarily" not to pay dividends on its preferred shares.

■ The complaint is cast in terms of a classic stockholders' action against Central and its directors. Neither it, nor the plaintiffs' sole affidavit supporting the motion, charges Southern with any wrongdoing or impropriety, or indicates any action by it contributing to Central's failure to declare the dividends. Nor is any relief whatsoever sought against Southern in the complaint. Given maximum breadth, the plaintiffs' claim is no more than that Central's directors established dividend policy with the fact in mind that from 1960 to 1963 Southern was endeavoring to acquire, and since 1963 it has owned, the bulk of Central's stock.

■ This, at most, gives cause for complaint only against Central and its directors. Southern's ownership of the stock is perfectly legal,[21] and there is nothing to suggest that it has in any way attempted to use its power to dictate or influence action by Central's directors. If simply because of Southern's anticipated and actual stockholdings those directors decided not to declare dividends, the responsibility is theirs alone.

■ It is elementary that the complaint must state "a claim showing that the pleader is entitled to relief" [22] against a party and this complaint does not involve Southern in the dispute. The claim stated

"* * * must show that the claimant is 'entitled to relief.' That is to say, the claim for relief must indicate the existence of a cause of action. By cause of action in this context is

14. Id. at 763–764.

15. 245 F.2d 609 (5th Cir. 1957).

16. Id. at 612.

17. Ibid.

18. Whittemore v. Continental Mills, 98 F.Supp. 387 (D.Me.1951); W. Q. O'Neall Co. v. O'Neall, 108 Ind.App. 116, 25 N.E. 2d 656 (1940); Swinton v. W. J. Bush & Co., 199 Misc. 321, 102 N.Y.S.2d 994 (Sup.Ct.1951), aff'd 278 App.Div. 754, 103 N.Y.S.2d 1019 (1st Dep't 1951).

19. Notes 36 Cornell L.Q. 744 (1951); 49 Mich.L.Rev. 275 (1950); 35 Minn.L.Rev.

93 (1950); 98 U.Pa.L.Rev. 753 (1950). See also 61 Harv.L.Rev. 1253 (1948), criticizing Schuckman, supra.

20. Kroese v. General Castings Corp., supra note 11, 179 F.2d at 764–765.

21. In November, 1962, the Interstate Commerce Commission approved Southern's acquisition of control of Central through ownership of its capital stock and, through Central, indirect control of its carrier subsidiaries. Southern Railway Company—Control—Central of Georgia Railway Company, 317 I.C.C. 557 (1962).

22. F.R.Civ.P. 8(a) (2).

meant a claim that facts exist which, under our legal system, are recognized as entitling the claimant to judicial action in vindication of a right or in remedying a wrong. * * * Courts are not authorized to require a party defendant to defend against a 'cause' not recognized by law as involving the vindication of a legal right or the remedying of a legal wrong." [23]

But the claim stated here "has not set forth either the acts or omissions on which it relies nor the theory it advances as a basis for liability" [24] against Southern. Nor does it, as to Southern, "indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants." [25] Under even the liberal standards by which the complaint here must be viewed, it asserts no case against Southern.

█ The prayer of the complaint, it is repeated, is limited to relief against Central and its directors, and does not mention Southern at all. But the plaintiffs have suggested that Southern might be ordered to vote its stock in such manner that Central will declare dividends on its preferred shares. This power, however, resides in Central's directors, not its stockholders, and any action the latter, *qua* stockholders, might take in this regard would be completely ineffective.[26] It is the directors who are "to administer the corporate affairs for the common benefit of all the stockholders," [27] including Southern as well as others.

█ Southern could, of course, so vote its stock when directors are elected that candidates committed to declaring such dividends might be placed in office. But no case had been found to support the proposition that leverage for a declaration of corporate dividends may be supplied through an order running against a stockholder, not alleged to have itself committed a legal violation, as to how its stock must be voted. Judicial decrees remedying legal wrongs operate directly upon the wrongdoers, and not upon parties innocent of legal offense even to reach those guilty of the wrongdoing. The relief the plaintiffs wish may be afforded, if it is otherwise proper to do so, by an order directed against the corporation that is already here, and no justification for Southern's joinder appears.[28]

Were the plaintiffs' difficulty on their motion a matter potentially correctable by amendment, their request for leave to amend would invoke a broad discretion. But at the hearing, counsel for the plaintiffs made it plain that they stand on the complaint as drawn insofar as Southern is concerned, and that no amendment is desired. Since the complaint provides no basis for the action the motion seeks, the motion will be denied.

### III

The defendants also predicate their motion to dismiss on two grounds addition-

---

23. Gold Seal Co. v. Weeks, 93 U.S.App. D.C. 249, 255-256, 209 F.2d 802, 807-808 (1954).

24. Heintz & Co. v. Provident Tradesmens Bank & Trust Co., 29 F.R.D. 144, 145 (E.D.Pa.1961).

25. Mathews v. Kilroe, 170 F.Supp. 416, 417 (S.D.N.Y.1959). See also 2 Moore, Federal Practice ¶ 8.13 at 1705 (2d ed. 1958).

26. Knapp v. Bankers Securities Corporation, 230 F.2d 717, 720 (3d Cir. 1956).

27. 3 Fletcher, Private Corporations § 838 at 178 (perm. ed. rev. repl. 1965). See also King Manufacturing Co. v. Clay, 216 Ga. 581, 118 S.E.2d 581 (1961);

Oliver v. Oliver, 118 Ga. 362, 45 S.E. 232 (1903); Hurt v. Cotton States Fertilizer Co., 159 F.2d 52 (5th Cir. 1947), cert. denied 331 U.S. 828, 67 S.Ct. 1351, 91 L.Ed. 1843 (1947); Gaynor v. Buckley, 203 F.Supp. 620 (D.Or.1962), aff'd 318 F.2d 432 (9th Cir. 1963).

28. See General Investment Co. v. Lake Shore & M. S. Ry. Co., 250 F. 160 (6th Cir. 1918); Sabre v. United Traction & Electric Co., 156 F. 79 (C.C.R.I. 1907); Subers v. Continental Securities Co., 12 Del.Ch. 236, 111 Atl. 433 (1920); Southwestern Portland Cement Co. v. Latta & Happer, 193 S.W. 1115 (Tex.Civ. App.1917).

al to the one discussed and considered in Part I. The first of the additional grounds is that the complaint impermissibly seeks relief tantamount to judicial regulation of the internal affairs of a foreign corporation. The second is the conventional doctrine of *forum non conveniens*. Although the defendants have presented each as an independent basis for dismissal, the first is properly to be considered only a part of the second,[29] and will accordingly be so treated.

■ As the cases state, the plaintiff's choice of forum will not be disturbed unless the balance of convenience is strongly in favor of the defendant.[30] This is particularly true where the plaintiff sues in a court at the place of his residence,[31] and one of the plaintiffs here is a citizen of the District of Columbia.

But the force of this consideration is lessened by the character of the litigation as defined by the plaintiffs themselves. In a class action, such as this, in which the plaintiff sues on behalf of himself and all other preferred stockholders,[32] the appropriateness of the home forum is weakened.[33] And, in all other significant aspects of the case, the showing the defendants make has power more than ample to bring to a halt further litigation in this Court.

Central and all but one of the remaining defendants are non-residents of the District of Columbia.[34] And not only is Central incorporated under Georgia law, but it is a Georgia corporation in the fullest sense of the word. Its principal place of business is there, its operations are centered there,[35] and almost all of its property is located there.[36]  Regular

29. See Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067, 1076 (1947), quoted infra note 33.
30. Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947); North Branch Products, Inc. v. Fisher, 109 U.S.App.D.C. 182, 184, 284 F.2d 611, 613 (1960), cert. denied 365 U.S. 827, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961); Caspar v. Devine, 103 U.S. App.D.C. 193, 194–195, 257 F.2d 197, 198–199 (1958); Daquila v. Schlosberg, 102 U.S.App.D.C. 366, 367, 253 F.2d 888, 889 (1958); Blake v. Capitol Greyhound Lines, 95 U.S.App.D.C. 334, 336, 222 F.2d 25, 26–27 (1955); Gross v. Owen, 95 U.S.App.D.C. 222, 221 F.2d 94, 95 (1955); Wiren v. Laws, 90 U.S.App.D.C. 105, 107, 194 F.2d 873, 874–875 (1951), cert. denied 346 U.S. 938, 74 S.Ct. 378, 98 L.Ed. 426 (1954).
31. See Koster v. (American) Lumbermens Mutual Casualty Co., supra note 29; Daquila v. Schlosberg, supra note 30.
32. The preferred stockholders on whose behalf plaintiffs brought this action are scattered- throughout 30 states and one foreign country.
33. In Koster v. (American) Lumbermens Mutual Casualty Co., supra note 29, the Court, speaking in a stockholders' derivative suit, said: "But where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause

of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." 330 U.S. at 524, 67 S. Ct. at 832, 91 L.Ed. at 1074.
34. See Gulf Oil Corp. v. Gilbert, supra note 30, 330 U.S. at 509, 67 S.Ct. at 843, 91 L.Ed. at 1062–1063; Nee v. Dillon, 99 U.S.App.D.C. 332, 334, 239 F.2d 953, 955 (1956); Gross v. Owen, supra note 30, 95 U.S.App.D.C. at 222–223, 221 F.2d at 95–96; Simons v. Simons, 88 U.S.App. D.C. 180, 181, 187 F.2d 364, 365 (1951), cert. denied 341 U.S. 951, 71 S.Ct. 1019, 95 L.Ed. 1374 (1951); Curley v. Curley, 74 App.D.C. 163, 164, 120 F.2d 730, 731 (1941), cert. denied 314 U.S. 614, 62 S.Ct. 114, 86 L.Ed. 494 (1941). See also Urquhart v. American-La France Foamite Corp., 79 U.S.App.D.C. 219, 221–222, 144 F.2d 542, 544–545 (1944), cert. denied 323 U.S. 783, 65 S.Ct. 273, 89 L. Ed. 625 (1944).
35. Central operates a total railroad mainline mileage of approximately 1,745 miles of which 1,253 or 71.8% is located in Georgia, 489 miles or 28.02% in Alabama, and 3 or 0.18% in Tennessee. In 1962 it transported 6,645,168,000 gross ton miles of which 4,656,070,000 or 70% was transported in Georgia.
36. The assets of Central and its subsidiaries are located in Georgia, Alabama, Tennessee and New York with the overwhelming proportion in Georgia.

meetings of its stockholders and board of directors have traditionally been held in Georgia, most of its corporate records are kept in Georgia,[37] and the vast majority of its directors and employees are Georgia residents.[38] By contrast, its contacts with the District of Columbia are minimal.[39]

The plaintiffs' action, by its very nature, will compel detailed inquiry into various aspects of Central's internal affairs. If its directors reached a bona fide decision, based on all relevant business considerations, that it would not serve the company's best interests to declare dividends on preferred stock, that decision may not be overturned judicially.[40] Among the considerations to be taken into account, at least by the defendants' theory, are Central's recent reorganization and its emergence with substantial deferred maintenance and obsolete equipment, the urgency of its needs to upgrade its trackage and rolling stock, its public responsibility to maintain its right of way and equipment in safe working condition, its labor policy with respect to increased wages and other benefits, and the long range importance of the business which it had been steadily losing to competitive railroads as a result of its shortage of adequate and modern equipment.

The location of the witnesses is an important consideration in determining whether *forum non conveniens* should be applied.[41] It is evident that the bulk of the witnesses whose testimony must necessarily be heard are outside the District of Columbia, beyond the reach of process from this Court.[42] Only one of Central's directors is here, but 15 are in Georgia; only eight of about 1,500 employees are here. Despite the defendants' challenge to continued proceedings here, the plaintiffs have not identified any witness within the District,[43] and aside from the plaintiffs themselves, and the

37. The minutes of the meetings of Central's stockholders, board of directors and executive committee subsequent to July 17, 1963, are maintained in New York with copies in Savannah. For all periods prior to that time they are maintained in Savannah.

Central maintains its accounting records by use of machines and computers located at Atlanta. The supporting records relating to maintenance and operations are all found at Atlanta since this is where data are reported for programming or coding in the machine accounting system. As would be expected, these records are voluminous. Only a small volume of pertinent financial records are maintained in the District of Columbia.

38. Fifteen of its 21 directors, and 1,494 of its 1,502 employees, are residents of Georgia. Its president and executive vice president, who during the period in question regularly consulted the board of directors on dividend matters, are stationed in Savannah. Its principal officers concerned with day-to-day operations and maintenance are stationed in Atlanta.

39. Central has never owned or operated any railroad line or related facilities within the District of Columbia, and it has no trackage rights over any line in the District. It does not provide any passenger or freight service directly or indirectly to or from the District. The extent of its contacts in the District is the solicitation of freight, principally from the Government, for movement over its system in Georgia, Alabama and Tennessee.

Central and its subsidiaries have no bank accounts or other assets in the District. Meetings of stockholders or directors are never held here. Only one director and eight employees reside here.

40. See Malone v. Armor Insulating Co., 191 Ga. 146, 12 S.E.2d 299 (1940); Bartow Lumber Co. v. Enwright, 131 Ga. 329, 62 S.E. 233 (1908); Annot., 27 A.L.R.2d 1073 (1953).

41. Gulf Oil Corp. v. Gilbert, supra note 30, 330 U.S. at 509–511, 67 S.Ct. at 843, 91 L.Ed. at 1063–1064; Nee v. Dillon, supra note 34, 99 U.S.App.D.C. at 333, 239 F.2d at 954; Gross v. Owen, supra note 30, 95 U.S.App.D.C. at 222, 221 F. 2d at 95.

42. See Gulf Oil Corp. v. Gilbert, supra note 30, 330 U.S. at 509–511, 67 S.Ct. at 843, 91 L.Ed. at 1062.

43. See Koster v. (American) Lumbermens Mutual Casualty Co., supra note 29, 330 U.S. at 526, 67 S.Ct. at 832, 91 L.Ed. at 1075; Gulf Oil Corp. v. Gilbert, supra note 30, 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed. at 1062.

one director and possibly the handful of employees here, no prospect of any other is seen.

■ Accessibility of sources of proof, another important factor,[44] cannot be approached outside Georgia. The records and documents that trial of the issues would inevitably necessitate are concentrated overwhelmingly there.[45] So also are those who handle those records.[46] And the plaintiffs have pointed to no documentary evidence within the District that would be needed in or would be relevant to this action.[47]

■ The place of occurrence of the activities by reason of which suit is occasioned plays a large role in *forum non conveniens* cases.[48] The necessity for application of law foreign to the forum does so also.[49] All important events in this litigation occurred outside of the District, and this Court would be required to apply principles of law not its own to resolve the issues if they are tried here. Although the fact that Central's internal affairs must be deeply probed is not alone sufficient to warrant dismissal of the action,[50] it is a circumstance to be given weight in the determination.[51] And while the difficulties of utilizing foreign law in judicial decisions would not of itself justify shunting the case to Georgia,[52] it is another factor to be carefully considered.[53]

44. Gulf Oil Corp. v. Gilbert, supra note 30, 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed. at 1062.

45. See note 37, supra.

46. Over 90% of Central's accounting personnel are located either at Atlanta or Macon, Georgia.

47. See Koster v. (American) Lumbermens Mutual Casualty Co., supra note 29, 330 U.S. at 526, 67 S.Ct. at 832, 91 L.Ed. at 1075.

48. Gulf Oil Corp. v. Gilbert, supra note 30, 330 U.S. at 509, 67 S.Ct. at 843, 91 L.Ed. at 1062–1063; Nee v. Dillon, supra note 34, 99 U.S.App.D.C. at 334, 239 F.2d at 955; Blake v. Capitol Greyhound Lines, supra note 30, 95 U.S.App.D.C. at 335–336, 222 F.2d at 26; Gross v. Owen, supra note 30, 95 U.S.App.D.C. at 222–223, 221 F.2d at 95–96.

49. Gulf Oil Corp. v. Gilbert, supra note 30, 330 U.S. at 509, 511–512, 67 S.Ct. at 844, 91 L.Ed. at 1063–1064; Nee v. Dillon, supra note 34, 99 U.S.App.D.C. at 334, 239 F.2d at 955.

50. In Koster v. (American) Lumbermens Mutual Casualty Co., supra note 29, 330 U.S. 527, 67 S.Ct. 833, 91 L.Ed. 1076, the Court said: "There is no rule of law, moreover, which requires dismissal of a suitor from the forum on a mere showing that the trial will involve issues which relate to the internal affairs of a foreign corporation. That is one, but only one, factor which may show convenience of parties or witnesses, the appropriateness of trial in a forum familiar with the law of the corporation's domicile, and the enforceability of the remedy if one be granted. But the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice."

51. Williams v. Green Bay & W. R. Co., 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 311 (1946); Bellevue Gardens, Inc. v. Hill, 111 U.S.App.D.C. 343; 297 F.2d 185 (1961); Mayflower Hotel Stockholders Protective Committee v. Mayflower Hotel Corp., 89 U.S.App.D.C. 171, 193 F.2d 666 (1951). Cf. Rogers v. Guaranty Trust Co., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652 (1933); Beasley v. Mutual Housing Co., 59 App.D.C. 245, 39 F.2d 290 (1930); Maccarone v. Big Sign Shop, 59 App.D.C. 345, 41 F.2d 567 (1930).

52. "The fact that the corporation law of another State is involved does not set the case apart for special treatment. The problem of ascertaining the state law may often be difficult. But that is not a sufficient ground for a federal court to decline to exercise its jurisdiction to decide a case properly before it." Williams v. Green Bay & W. R. Co., supra note 51, 326 U.S. at 553, 66 S.Ct. at 286, 91 L.Ed. at 314.

53. "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. * * * If trial was in a state court, it could apply its own law to events occurring there. If in a federal court by reason of diversity of citizenship, the court would apply the law of its own state in which it is likely to be experienced." Gulf Oil Corp. v. Gilbert, supra note 30, 330 U.S. at 509, 512, 67 S.Ct. 843, 844, 91 L.Ed. at 1063, 1064.

■ Heavily involved here, too, is the public interest in avoiding litigation in a community unrelated to it, and in having localized controversies decided at home. It is of the very essence of *forum non conveniens* "that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute."[54] "Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin."[55] The courts of the District of Columbia are, of course, open to all litigants who have good reason to utilize them. But the exigencies of this Court's docket[56] and its responsibilities to the Washington community[57] necessitate that access be denied where local concern in the litigated matter is at best very remote.

We must remember also that we are dealing, not with a general commercial corporation, but rather with one performing an important public service, particularly to the citizens of Georgia. We are, too, involved with the charge that those to whom the management and destiny of the corporation have by Georgia law been confided have not properly performed one of the duties of their offices. And it is to them as a class that Georgia displays special concern by her requirement that a majority of their group be residents of that state.[58] An undertaking, without adequate justification, to resolve the questions the complaint poses in this forum, rather than in a tribunal there, is fraught with all the sensitivities and dangers usually associated with unwarranted intrusions.

■ In sum, as to all of the "practical problems that make trial of a case easy, expeditious and inexpensive,"[59] as well as the considerations vital to the public at large, the courts in Georgia have far more to offer.[60] Objective evaluation of all factors related to the interests and conveniences of the parties and witnesses, the litigation itself and orderly administration of the law, leads inevitably to the conclusion that the action must be discontinued here.[61]

54. Gulf Oil Corp. v. Gilbert, supra note 30, 330 U.S. at 507, 67 S.Ct. at 842, 91 L.Ed. at 1062.

55. Id. at 508, 67 S.Ct. at 843.

56. Gulf Oil Corp. v. Gilbert, supra note 30, 330 U.S. at 508–509, 67 S.Ct. at 843, 91 L.Ed. at 1062–1063; Daquila v. Schlosberg, supra note 30, 102 U.S.App.D.C. at 367, 253 F.2d at 889; Nee v. Dillon, supra note 34, 99 U.S.App.D.C. at 334, 239 F.2d at 955; Gross v. Owen, supra note 30, 95 U.S.App.D.C. at 223, 221 F.2d at 95–96; Simons v. Simons, supra note 34, 88 U.S.App.D.C. at 181, 187 F.2d at 365; Urquhart v. American-La France Foamite Corp., supra note 34, 79 U.S.App.D.C. at 222, 144 F.2d at 545.

57. Gulf Oil Corp. v. Gilbert, supra note 30, 330 U.S. at 508–509, 67 S.Ct. at 843, 91 L.Ed. at 1062–1063; Gross v. Owen, supra note 30, 95 U.S.App.D.C. at 222–223, 221 F.2d at 95–96; Urquhart v. American-La France Foamite Corp., supra note 34, 79 U.S.App.D.C. at 221, 144 F.2d at 544.

58. Ga.Code § 94–203 (1933).

59. Gulf Oil Corp. v. Gilbert, supra note 30, 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed. at 1062.

60. Considering the theory of the complaint and the nature of the relief sought, no problem respecting a statute of limitations is envisioned. See Ochs v. David Maydole Hammer Co., 138 Misc. 665, 246 N.Y.S. 539, 543 (1930).

61. Williams v. Green Bay & W. R. Co., supra note 51, is clearly distinguishable. A class suit to recover amounts allegedly payable out of earnings in lieu of interest under debentures of a Wisconsin corporation was held to be maintainable in a district court in New York, but, as the Court said: "Nor can we conclude that the maintenance of this suit in New York will be vexatious or oppressive. Petitioners, as we have said, reside there. While respondent's railroad lines are wholly in Wisconsin, it does business in New York. The Class B debentures are listed and traded in on the New York Stock Exchange. The amounts payable on them in lieu of interest are payable in New York. Respondent maintains its financial as well as a traffic office in New York. It maintains a bank account in New York, not only to take care of obligations under its securities, but also to handle excess operating funds not needed in Wisconsin. Five of respondent's

## IV

Were it possible, in lieu of dismissal of this action on *forum non conveniens,* to transfer it to the appropriate federal district court in Georgia,[62] the Court would pursue that course.[63] Transfer of an action, however, although otherwise proper, is limited by the terms of the statute to a "district or division where it might have been brought." The only possible basis of federal jurisdiction of this action outside the District of Columbia would have been diverse citizenship of the parties.[64] But the action embraces one plaintiff and one defendant who, as the complaint states, have common citizenship in the District, and that defendant is properly before the Court.[65] Diversity of citizenship having thus been destroyed from the moment of institution of this action, no transfer is possible,[66] and it must be dismissed.

six directors are to be found in New York. These five directors include all the executive and fiscal officers, except the president who supervises operations in Wisconsin and the general auditor who is in Wisconsin. Directors' meetings are customarily held in New York. Two of the three members of the executive committee, which acts for the board between meetings, are to be found in New York. Financial records, transfer books, minute books and the like are kept in New York. These facts plainly indicate to us that it would not be vexatious or oppressive to entertain this suit in New York, whether the availability of witnesses or any other aspect of a trial be considered." 326 U.S. at 559–560, 66 S.Ct. at 289–290, 90 L.Ed. at 318.

This case is more like Koster v. (American) Lumbermens Mutual Casualty Co., supra note 29, where a stockholders' derivative suit brought by a New York resident against an Illinois corporation was dismissed under forum non conveniens, where the situation was described: " * * * Lumbermens does business in forty-eight states, but its home and principal place of business are in Illinois. There its directors live; there all records are kept; and no witness shown to be necessary to either side of the case resides outside of Illinois. The plaintiff himself lives in New York, but he does not appear to have attended any meetings of policyholders or to have raised objection to the acts alleged, or otherwise to have personal knowledge so that he could possibly be a witness except as to his ownership of the policy of insurance which is not denied. It would appear necessary for him to make his own case largely from books and records in Chicago and from testimony of officers and witnesses resident there. It also is evident that legality of many of these transactions will turn on the law of Illinois, under which Lumbermens exists and within whose territory the questioned acts took place. That would be home law if the case were tried in Chicago; it would be foreign law to New York and the case, if tried there, would involve conflict of laws. It also is urged that plaintiff's total of premium payments is less than $250, which would be the maximum possible interest he personally could have in the controversy." 330 U.S. at 520, 521, 67 S.Ct. at 830, 91 L.Ed. at 1072.

62. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

63. Blake v. Capitol Greyhound Lines, supra note 30.

64. 28 U.S.C. § 1332(c).

65. Cf. Philip Carey Manufacturing Co. v. Taylor, 286 F.2d 782 (6th Cir. 1961), cert. denied 366 U.S. 948, 81 S.Ct. 1903, 6 L. Ed.2d 1242 (1961).

66. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); Masterpiece Productions v. United Artists Corp., 94 F.Supp. 116 (E.D.Pa.1950).