LAWRENCE A. SUBERS,

*vs.*

THE CONTINENTAL SECURITIES COMPANY, THE AMERICAN RUBBER PRODUCTS COMPANY and THE AMERICAN TIRE CORPORATION.

*New Castle, Oct. 28, 1920.*

In a suit by a stockholder to enjoin a corporation from disposing of certain stock in another corporation, and to require defendants to produce their minute books, etc., a plea that an Ohio corporation, and not a defendant described in the bill as a Delaware corporation, took part in the matters referred to in the bill *held* sufficient to bar complainant from obtaining relief against the Ohio corporation; it not being a party.

All persons, materially interested in the subject-matter of a suit, must be made parties thereto.

In a stockholder's suit to annul a contract between the corporation and another corporation, whereby the latter should take over all complainant's patents and the tangible property of the first corporation, the fact that a third corporation was sought to be enjoined from disposing of the stock of the first corporation *held* not to bear on the annulment of the contract so as to require such third corporation to be joined, and hence a plea of such non-joinder was not sufficient to defeat the bill as to all defendants.

In a stockholder's suit to annul a contract between the corporation and a second corporation, whereby certain property was to be transferred to it, wherein it was sought to require a third corporation to produce certain records and books, a plea that such third corporation had not been joined *held* not to preclude relief against the first corporation, on the ground that the third corporation was an interested party.

In a stockholder's suit to set aside a contract between the corporation and a second corporation, wherein a plea was interposed that a third corporation, against whom certain relief was prayed, had not been joined, such nonjoinder did not bar relief under the claim that the third corporation controlled the other two corporations, and had inspired the execution of the contract sought to be set aside.

In a stockholder's suit to set aside a contract between the corporation and a second corporation relating to the transfer of certain property and seeking relief against a third corporation which had not been effectively joined, a plea, setting up such nonjoinder, *held* not to preclude relief against defendant; the mere fact that such third corporation would be affected by the annulment of the contract, which depended on another contract to which such third corporation was a party, not making it a materially interested party.

That a corporation owns stock in defendant corporation does not make it a necessary party in a proceeding requiring defendant to produce its books.

In a stockholder's suit to annul a contract between the corporation and another corporation, a plea of nonjoinder of a third corporation which was a stockholder will not preclude relief against defendant, on the ground that the nonjoinder would result in a multiplicity of suits.

Pleas by two defendants that a necessary party was omitted were argued as to their sufficiency in law, and the facts are sufficiently stated in the opinion of the Chancellor.

*Andrew C. Gray*, for complainant.

*Henry Ridgely*, for defendants who filed the pleas.

THE CHANCELLOR. The question for decision is whether a plea to the effect that a necessary party has been omitted is sufficient in law. The complainant is Lawrence A. Subers, who described himself as a stockholder of the American Rubber Products Company, one of the defendants, herein called Products Company. There are three defendants, the Continental Securities Company, herein called Securities Company; the American Rubber Products Company, herein called the Products Company; and the American Tire Corporation, herein called Tire Corporation; and all of the defendants are described as corporations of the State of Delware.

Pleas have been filed by the last two defendants, and no appearance made for the first named corporation.

An abstract of the bill is as follows: Subers, the complainant, owning certain patent rights granted certain rights of user thereof on June 27, 1914, to the Subers Fabric & Rubber Company (herein called Rubber Company), and later a bankruptcy receiver was appointed for the company. In March, 1918, the Securities Company, Subers and the Rubber Company made an agreement, among other things, that the Securities Company should bring into existence a corporation to be known as the above mentioned American Rubber Products Company (herein called Products Company), to take over the assets of a certain New Castle Rubber Company, the stock of the Products Company to be made up of two kinds of preferred stock and twenty-nine thousand shares of common stock of no par value; that all the second preferred stock and twenty-one thousand shares of common stock be issued to New Castle Rubber Company in payment for its assets; that Subers should assign to a trust company all his patents granted in the Western Hemisphere, the patents to be transferred to the Products Company when it should be earning and paying a certain dividend; and that Subers should receive *inter alia* two thousand shares of common stock of the Products Company. That pursuant to the agreement the Products Company was incorporated, voting power being given to the common stock only. The New Castle Rubber Company conveyed to the Products Company its assets and received the preferred and six thousand shares of common stock of the Products Company; that Subers assigned his patents to the Guardian Savings & Trust Company of Cleveland to be held in escrow under the agreement; that the Products Company took possession of the assets of the New Castle Rubber Company, but because the latter could not comply with the terms of the agreement the sale was abandoned. That the preferred stock and six thousand shares of common stock of the Products Company had already been delivered to the New Castle Rubber Company, and these were returned to the Products Company after the failure of the transfer; that in some way unknown to the complainant, Subers, fifteen thousand shares of common stock of the Products Company were issued to the Securities

Company, and notwithstanding the failure of the consideration for said shares the Securities Company retains them; that the Securities Company distributed *gratis* part of the common stock of the Products Company, but still retains in its name on the books of the Products Company twelve thousand five hundred and twenty-one shares of common stock and votes them, thereby controlling the Products Company, for only seventeen thousand shares of its common stock are outstanding; that the fifteen thousand shares were issued illegally and should by appropriate proceedings be cancelled, though there is no prayer to that effect in the bill; that prior to January 12, 1920, a supposed agreement in writing was made between the Products Company and the Tire Corporation by which the latter should take over all Suber's patents and the tangible property of the Products Company; and that the Tire Corporation represented that it owned such patents, etc.; that the Tire Corporation was organized at the instance of the Securities Company to take over the patents, etc., and deprive the complainant, Subers, of his patents, and that the directors and officers of the Tire Corporation are largely members of the Products Company; that the Products Company has not earned such dividend as to entitle it to a transfer of the patents from the Trust Company, and that by the transfer of the patents, etc., to the Tire Corporation the Products Company has put it out of its power to comply with the conditions respecting the assignment of the patents to the Trust Company; and that the contract between the Products Company and the Tire Corporation was void and a fraud on the rights of the complainant and of the stockholders of the Products Company.

The prayers of the bill were (1) for a subpoena; (2) for answers; (3) that the contract between the Products Company and the Tire Corporation be adjudged void and set aside; (4) that the Tire Corporation and the Products Company be enjoined from disposing of the patents and licenses; (5) that the Securities Company be enjoined, until the further order of the Chancellor, from selling any common stock of the Products Company held by the Securities Company. There were also prayers for the production of books, etc., of the three defendant corporations both before and at the hearing of the cause.

Separate pleas were filed by the Products Company and the Tire Corporation, and each declared that the above mentioned Continental Securities Company, a Delaware corporation, named as a defendant, had no part or connection in or with the matters referred to in the bill, but that the Continental Securities Company, a corporation of Ohio, took part in and was concerned with the matters referred to in the bill, without admitting that the Securities Company of Ohio did anything wrong.

Two distinct and separate subject-matters are set forth in the bill as grievances. The first complaint is, in substance, that the Securities Company holds unlawfully twelve thousand five hundred and twenty-one shares of common stock of the Products Company and votes them, thereby controlling the Products Company and manages it so disadvantageously that no dividends are earned by it. The relief sought against the Securities Company, as shown by the prayers is, (a) an injunction against disposing of the said shares of the Products Company *until the further order of the Chancellor;* and (b) that it produce its minute books or any other books of record it may have, for examination and inspection by the complainant as to entries, resolutions or data of any kind as to its officers and directors and the time of their service. The Tire Corporation has no interest in this subject-matter.

The second complaint is, that the contract between the Products Company and the Tire Corporation was a fraud on the rights of the complainant and stockholders of the Products Company and void, and that by the making of the contract the Products Company had put it out of its power to conform to the conditions under which the patents were assigned in escrow, or to carry on the business for which it was incorporated. The relief sought against the Products Company and the Tire Corporation is, (a) that the contract be set aside; and (b) that the Tire Corporation be enjoined from using or disposing of the property acquired from the Products Company and the patents, applications for patents and trade-marks; and (c) that they produce their minute books, or any other books of record they may have, for examination and inspection by the complainant as to entries, resolutions or data of any kind as to their officers and directors and the time of their service.

Both of the pleas say that the Securities Company of Ohio, and not the Securities Company of Delaware, took part in the matters referred to in the bill. In other words, that the wrong corporate entity has been made a party defendant, and the right corporate entity has been omitted, and that the plea is sufficient in law to defeat the bill as to all of the defendants.

As to the first grievance the plea is, of course, clearly sufficient to bar the complainant from obtaining any relief at all as against or relating to the Securities Company of Ohio, for it is not a party. But the question is whether relief as against the Products Company and Tire Corporation, must also be denied based on the assertion that the Securities Company of Ohio is a necessary party.

Courts of equity delight to do full justice and not by halves, but are cautious to avoid injuring any one whose rights are affected by its decrees. Therefore it has always been required that all persons materially interested in the subject-matter of a suit be made parties to it. *Farmers' & Mechanics' Bank v. Polk*, 1 *Del. Ch.* 167; *Davidson v. Wilson*, 3 *Del. Ch.* 307; *Martin v. Purnell*, 4 *Del. Ch.* 249. In 1 *Whitehouse on Equity Practice*, § 64a, *p.* 107, a guide in determining whether the interest of a person is such as to constitute him an indispensable party is stated lucidly thus:

"The general proposition may be laid down that a person lacks such interest [in the subject-matter of the suit] when the result of the decree will not charge him with any liability, or alter or rescind his contract, or affect his title or interest in any property, or when his absence will not impair the just ascertainment of the merits of the cause, or subject the defendants actually before the court to undue inconvenience, or danger of loss, or greater or different liability."

But it has also been well phrased by our own learned Chancellor Bates in *Martin v. Purnell, supra*, at *page 252 of 4 Del. Ch.* in these words:

"It is a rule in equity proceedings, subject to some exceptions, that all persons having an interest in the subject-matter, such as may be affected by the decree sought, shall be parties, whether plaintiff or defendant. *Mulford's Pl.* (164); *Cooper's Eq.* (33) n; 1 *Daniell's Ch. Pr.* (240); *Story's Eq. Pl.* § 72. The object of the rule is that complete justice may be done by settling the rights of all persons interested in the subject of the proceeding, so as to make

the performance of the order of the court perfectly safe to those who are compelled to obey it, and to prevent a multiplicity of suits. It may be that a party interested in the subject-matter may neither seek a decree, nor may a decree be sought against him. Nevertheless if his interests may be affected, he must be joined to the end that he may be heard and that his rights may be concluded by the suit and further litigation be prevented."

Always the determination as to parties is peculiarly in the discretion of the court, according to the circumstances of each case.

Applying the tests set out by Chancellor Bates an answer should be found to the following queries: Is it necessary to make the Securities Company of Ohio a party (1) to settle the rights of all parties interested in the subject-matter of the proceeding? (2) Or to make performance of a decree proper to be made against the Products Company or the Tire Corporation safe for them? (3) Or to prevent a multiplicity of suits? (4) Further, although no decree can be made against the Securities Company of Ohio, are its interests so affected by a proper decree to be made against the Products Company or the Tire Corporation, or both, that the Securities Company of Ohio should be heard before its rights as to the proper subject-matters of the decree are concluded, or to prevent further litigation as to such subject-matters?

It is true, as urged in support of the sufficiency in law of the plea, that the bill is an arraignment of the Securities Company and asserts that the Products Company and the Tire Corporation were set up by and have been and are controlled by the Securities Company. But is it not clear that the fact that the Products Company and the Tire Corporation were set up by the Securities Company and were and are controlled by it is important or controlling in this issue. The main object, and in fact the real and only purpose of the bill, as shown by the prayers, is to annul the supposed contract between the Products Company and the Tire Corporation. This is the only real permanent effective relief sought. The temporary injunction against the disposal by the Securities Company of shares of common stock of the Products Company held by it and the prayer for the production of books do not bear on the annulment of that contract. Furthermore, this has no bearing on the issue as to the validity of the plea.

It is not controlling of the issue that the Products Company

and the Tire Corporation were set up by the Securities Company, or the fact that the actions of the Products Company and Tire Corporation complained of were done at the instigation of officers of the Securities Company, or in furtherance of some plan of the Securities Company detrimental to the Products Company, or to the rights of the complainant, Subers, as holder of stock of the Products Company, or as the owner of the patents or rights to the patents. The pertinent consideration is, not who inspired, instigated or commanded the action or the purpose thereof, but what was the character and effect of the action.

It is urged that the Securities Company would be affected by the annulment of the contract between the Products Company and the Tire Corporation, because its meaning, effect and validity are dependent on the contract of March 21, 1918, to which the Securities Company was a party, and its rights and duties under the latter contract would be involved. But under the contract of March 21, 1918, the only duty to be performed by the Securities Company was to bring into existence the Products Company and to incorporate another company, and this was done; and all other rights and duties under that contract belonged to and were imposed upon those two corporations when created. As indicated above, the object of the Securities Company in bringing about the making of the contract between the Products Company and the Tire Corporation, and the manner in which it was brought about, are quite immaterial; the point being, was the contract in fact fraudulently made by the contracting parties, or was it injurious to the rights of the complainant, as a stockholder of the Products Company, or as owner of the patents?

Again it is urged that because of the ownership by the Securities Company of fifteen thousand shares of common stock of the Products Company, an order for the production of the books of the Products Company would affect the Securities Company. But the rights of a stockholder of a corporation are not, in the absence of some reason assigned therefor, considered when there is an order to produce books for the purpose of obtaining therefrom evidence pertinent to the issues in litigation against the corporation.

It is urged further, that if the plea be overruled "the record

will present the remarkable situation of a party to a suit who has no connection with and no concern in, near or remote, any of the elements of the controversy." Well, what of it? What embarrassment is there to any one but the complainant? If the plea is overruled and the Continental Securities Company of Dealware has made default in appearing or answering, the complainant may, or may not, take a decree against it based on the allegations of the bill. What if he does? Who is hurt thereby? No one. Neither is any one helped thereby. The Securities Company of Ohio has no interest in the annulment of the "supposed contract," except as a stockholder of the Products Company. A decree annulling the supposed contract may be safely performed by the parties thereto, the Products Company and the Tire Corporation, and the Securities Company of Ohio as a stockholder of the Products Company would not be affected in any manner different from other stockholders of that company.

A decree annulling the supposed contract would end the litigation as to the validity thereof, and a multiplicity of suits would not necessarily or naturally follow such a decree.

Inasmuch as the relief sought against the Securities Company is distinct from and would be based on matters different from those on which the decree against the Products Company and Tire Corporation in annulling the supposed contract would be based, a multiplicity of suits would not naturally result.

The contention made in support of the plea that it was not within one of the exceptions to the rule as to necessary proper parties is sound. Courts in order to do justice to parties within their jurisdictions sometimes retain cases where a necessary party is out of the jurisdiction. But the Securities Company of Ohio, for aught that appears in the bill, may be within the jurisdiction of this court by having an office or agent here, and the bill does not make averments necessary to bring the case within the exceptions.

None of the reasons urged in support of the sufficiency of the plea are sound, and none have been found by the court. The pleas will, therefore, be overruled.