167 A.2d 848 (1961)
HESSLER, INC., a corporation of the State of Delaware, Plaintiff,
v.
Abraham M. ELLIS, Herman M. Ellis, Martin B. Ellis, Sidney H. Ellis, copartners, trading as A. M. Ellis Theatres Co., Defendant.
Court of Chancery of Delaware, New Castle.
February 10, 1961.
Albert W. James and Arthur J. Sullivan, of Morris, James, Hitchens & Williams, Wilmington, for plaintiff.
Aubrey B. Lank, of Theisen & Lank, Wilmington, for defendant.
*849 SEITZ, Chancellor.
Plaintiff, Hessler, Inc. ("plaintiff") filed a complaint seeking to reform certain instruments or, in the alternative, to have them rescinded and cancelled. The four co-partners, trading as A. M. Ellis Theatres Co. ("defendant"), have moved to dismiss for failure to state a claim and for failure to join indispensable parties. This is the decision on that motion.
Since the factual allegations of the complaint are taken to be true for purposes of disposing of the motion, I proceed to narrate them. Also, although many of the transactions were with plaintiff's predecessor in title I shall refer only to "plaintiff", because the distinction has no legal significance.
The plaintiff is and has for some time been the owner of a tract of land containing about 75 acres. It is located on the westerly side of the DuPont Highway near Minquadale, Delaware. Plaintiff leased the northerly portion of that same tract to Taustin and Geller ["original lessees"] on March 19, 1949 for the purpose of constructing and operating an outdoor movie theatre or for other forms of public amusement. The 22.80 leased acres were described in the recorded lease agreement which was for 20 years with a 10-year renewal option. At the time the entire 75-acre tract was unimproved. The original lessees then assigned their interest in the theatre ground to M. & S. Amusement Enterprises, Inc. ("M & S") on June 6, 1949. The assignment was recorded but was without plaintiff's approval. The theatre was completed about July 1, 1949 and the assignee commenced operation.
On November 29, 1951, plaintiff leased to Wilmington Speedway, Inc. ("Speedway") a portion of the land to the south of and immediately adjacent to the property leased for theatre purposes. Such land was to be used for the construction and operation of an automobile racetrack. The lease was for five years with certain renewal options. The leased land was irregular in shape. While it was specifically described in the lease, the acreage does not appear. In the Spring of 1952, Speedway proceeded to construct the racetrack, a grandstand, and various other fixtures necessary to the operation of a raceway. However, Speedway in fact erected the grandstand on portions of the land under lease to M & S, as assignee, rather than on the land leased to it. This was done without plaintiff's knowledge or consent. It is the source of this litigation.
During the period just discussed, the same three individuals were the controlling stockholders and were officers and directors of both Speedway and M & S.
Financial difficulties resulted in the filing of petitions for reorganization under the Bankruptcy Laws on the part of Speedway & M & S. In the M & S proceeding the present defendant entered into a contract for the purchase of the theatre assets of M & S on December 23, 1954. The defendant, on its own, surveyed the theatre ground in anticipation of leasing said ground by assignment of the lease or otherwise. The survey, dated December 27, 1954, clearly showed the location of the grandstand to be on ground then leased to the bankrupt M & S as assignee. Plaintiff claims it did not see this survey.
Because there could be no assignment of the lease of March 1949 as amended, without plaintiff's consent, on or about February 1, 1955, M & S and the defendants requested such consent from plaintiff. On February 25, 1955, plaintiff gave his consent to the assignment of lease from M & S to the defendants.
On March 16, 1955, M & S in bankruptcy, executed a bill of sale to the defendant of the "theatre operated by the Seller * * * including all the chattels, fixtures and equipment contained therein and used by the Seller". On the same date defendant, without plaintiff's consent, sublet to a "new" Speedway the ground on which the grandstand *850 was situated, being 2.375 acres, more or less. This sublease was not recorded.
About March 16, 1955 defendant also executed an "Assumption Agreement" under which it assumed all of the obligations under the 1949 leasehold agreement as amended. It further agreed to spend substantial sums for repairs and improvements.
At no time during the negotiations did the defendant or its agent disclose to plaintiff that the grandstand was on the land sought to be leased. Defendant knew or should have known that the grandstand was then being used exclusively by Speedway.
About May 1, 1957, the Trustee in Bankruptcy for Speedway sold its assets including, inter alia, the "grandstands" to Mellinger and Herbert. On May 26, 1957, plaintiff executed a lease to them of the racetrack property, including the "grandstand" and other fixtures. Plaintiff alleges that at that time it was still under the impression that the grandstand was on the ground leased to Speedway.
In June 1957 Herbert and Mellinger were advised by defendant that the grandstand was on property leased by it and thus could only be used by entering into a sublease with defendant. They in turn notified plaintiff on June 25, 1957. This was the first time plaintiff was aware that the grandstand was not located on the so-called Speedway tract.
Later Mellinger and Herbert obtained a lease for the grandstand property from defendant. However, they are in default on both leases. Plaintiff resumed possession of the raceway property.
Plaintiff alleges that at the time defendant was negotiating as a prospective lessee, it had a duty to disclose to plaintiff its knowledge that the grandstand for the raceway was on the land it sought to lease. Plaintiff further alleges that defendant nevertheless remained silent concerning such fact.
The grandstand and the equipment are essential to the use of the Raceway and plaintiff is prevented from making use of it for its primary purpose. Plaintiff also alleges that prior to the commencement of this action, it requested defendant to release to plaintiff that portion of the leased land upon which the grandstand and certain equipment used in the operation of the "automobile raceway" are located. In exchange, plaintiff offered, under the leasehold agreement, to provide defendant with a like area in size on the northeast and adjacent to the "outdoor movie theatre" property. Defendant refused this request.
Plaintiff first prays that the lease to the original lessees dated March 19, 1949, amended April 26, 1951, be reformed nd modified by deleting therefrom the land area, 2.375 acres more or less, upon which the grandstand is located, and that the "Consent of Landlord to Assignment of Lease" be reformed in a like manner.
Implicit in the term "reformation" in law is the need for a change in the written agreement. It is made so that the agreement as reformed will reflect the true intent of the parties. Consequently, unless the court finds that the parties are charged with having orally agreed on particular material terms, there is no contract to be reformed, regardless of defendant's conduct and plaintiff's mistake. Colvocoresses v. W. S. Wasserman Co., 26 Del.Ch. 333, 28 A.2d 588.
The allegations of the complaint show that there was no mistake by either plaintiff or defendant as to the land area to be leased. Plaintiff leased exactly that land it intended to lease. Yet, the plaintiff seeks to reform the lease agreement by reducing such land area. Plaintiff presumably recognizes the difficulty inherent in its request because it offers to substitute other land. Obviously, such a substitution would not reflect the true agreement of the parties because neither plaintiff nor defendant contracted with respect to the "substitute" land. *851 To recognize this approach would constitute the making of a new agreement by the court. This is so even if we assume that defendant's conduct was "inequitable" in the sense employed in the Colvocoresses case.
I conclude that the complaint shows on its face as a matter of law that the plaintiff is not entitled to reformation of the instruments in question. See 1 Black on Rescission and Cancellation (2nd ed.), § 11.
I next consider plaintiff's alternative prayer for rescission and cancellation. It is quite clear, of course, that denial of the right to reformation does not automatically preclude the right to grant rescission and cancellation. See 1 Black on Rescission and Cancellation (2nd ed.) § 11. This is so because there can be a finding of mistake or misconduct which would warrant the setting aside of a transaction even though the court could not find that the parties actually entered into an oral arrangement which was not accurately reduced to writing.
Courts of equity have imposed certain limitations upon the right to rescission. See 3 Pomeroy Equity Jurisprudence (5th ed.) § 870a. One of these restrictions is that the plaintiff must offer or tender restoration of the defendant's former status quo. See Eastern States Petroleum Co. v. Universal Oil Products Co., 29 Del.Ch. 305, 49 A.2d 612; William Whitman Co. v. Universal Oil Products Co., D.C.Del., 125 F.Supp. 137; 3 Black on Rescission and Cancellation (2nd ed.), § 616. As the court said in Hegarty v. American Commonwealths Power Corp., 19 Del.Ch. 86, 163 A. 616, 619, rescission would not be granted unless "* * * a just and equitable restoration of the substantial status quo ante could be accomplished."
The most liberal reading of the complaint fails to disclose that plaintiff anywhere has offered to restore defendant to its former status. Certainly the offer to substitute other land for that used for the grandstand is not compatible with rescission and cancellation. Rather, it is an attempt to modify the written instruments in dispute and then enforce it as modified.
Since plaintiff's complaint fails to contain a significant prerequisite to the granting of rescission and since it fairly appears from the complaint that plaintiff's property has been the beneficiary of substantial expenditures by defendant, it follows that the complaint to the extent that it is based on rescission and cancellation must also be dismissed. See 3 Black on Rescission and Cancellation, § 625.
In view of my conclusions it is not necessary to consider other arguments advanced by defendant.
The defendant's motion to dismiss will be granted.
Present order on notice.