**Edward L. HUNT et al., Plaintiffs,**

**v.**

**Michael D. DelCOLLO et al., Defendants.**

Court of Chancery of Delaware,
New Castle.

March 7, 1974.

Samuel V. Abramo, Abramo, Hunt & Abramo, Wilmington, for plaintiffs.

William R. Hitchens, Jr., and Morris Lewis Stoltz, II, Morris, James, Hitchens & Williams, Wilmington, for defendants DelCollo, Blanchfield, Tauscher and C. Iacono Const. Co.

David Roeberg, Potter & Roeberg, Wilmington, for defendants Ferrigan.

BROWN, Vice Chancellor.

Defendants in this action have moved to dismiss under Rule 12, Del.C.Ann., on the grounds that the complaint fails to state a claim upon which relief may be granted, and also for the additional reasons that the Court lacks jurisdiction, that Plaintiffs are guilty of laches and for failure of Plaintiffs to join an indispensable party. Defendants concede that for the purpose of their motions, the facts well pleaded by the complaint must be accepted as true. Hessler, Inc. v. Ellis, 39 Del.Ch. 517, 167 A.2d 848 (1961). The basic facts thus admitted are as follows.

During 1965 a certain oblong strip of land located in New Castle County was owned of record by one Joseph G. Savarese, who is not named as a party to the suit. Savarese subdivided this strip of land into six residential building lots to be known as "Wyckwood Court" and caused a plot thereof to be recorded. By a separate written declaration of restrictions dated November 15, 1965 and also recorded, Savarese set forth certain "covenants, agreements and restrictions" which were stated to be "covenants running with the land on the aforesaid Plot of Wyckwood Court and binding upon the Declarants, their heirs and assigns, and all persons claiming under them". Savarese's wife joined in the declaration "for the purpose of subordinating all her right, title and interest, in the nature of dower or otherwise, to the terms, conditions, easements" set forth therein. These restrictions were incorporated by reference in the deeds to all six lots.

By paragraph seven of the declaration it was provided that the conveyance of any lot would automatically vest in the grantees, their heirs and assigns, the right and privilege, in common with the Declarants, their heirs and assigns, to use for roadway purposes three sixteen foot wide private rights-of-way as designated on the plot of Wyckwood Court. As laid out, the six lots were numbered one through six and each was located consecutively behind the other in numerical order, with lot one being nearest to the available public road and lots five and six being at the interior end of the strip of land and furtherest from the public road. The ten foot right-of-way ran the length of the strip and at one side thereof. The three sixteen foot rights-of-way each ran perpendicular to ten foot right-of-way and bisected each consecutive pair of lots. In other words, one such right-of-way was designated between lots one and two, another between lots three and four and another between lots five and six. Thereafter, paragraph seven continued as follows:

"Declarant Joseph G. Savarese, convenants and agrees that he will, at his sole cost and expense, and in connection with the construction of dwelling houses on the aforesaid tract of land construct a private roadway within the aforesaid ten (10) feet wide right-of-way on or before November 1, 1967, and will construct a private roadway within any sixteen (16) feet wide right-of-way as houses are completed abutting the same. Thereafter, the owners of lots abutting any sixteen (16) feet wide right-of-way shall be equally responsible for the cost and expense of keeping and maintaining the sixteen (16) feet wide right-of-way abutting their respective numbered lots in good order and repair; and each owner of a numbered lot on the aforesaid Plan shall be responsible to contribute one-sixth (⅙) of the cost and expense of keeping the aforesaid ten (10) feet wide right-of-way in good order and repair and in the event that such owners cannot agree on the necessity of repair or upon the reasonable cost of repairs for such ten (10) feet wide right-of-way, the decision of the owners of a majority of the

numbered lots shown on said Plan shall be sufficient to constitute approval of repairs made or to be made, as well as to the cost thereof, and such decision shall be binding upon all owners in said tract."

The ten foot roadway was constructed in 1968, but whether or not this was done by Savarese is not clear. It is clear, however, that Savarese and wife divested themselves of title to all six lots before any of them were conveyed to the ultimate owners who are all now parties to this suit. In other words, Plaintiffs MacDonald and Hunt, and Defendants DelCollo, Blanchfield, Tauscher and Ferrigan, who are now the owners and residents of the six lots and dwelling houses thereon, all took title from one other than Savarese, and thus from one who first derived title through Savarese.

It is also admitted that none of the three sixteen foot roadways were constructed by Savarese as the dwelling houses were completed. Plaintiffs MacDonald and Hunt intend to construct the roadway between their lots five and six at their own expense. The remaining two roadways have not been constructed by the other four owners or anyone else, and at present at least portions of the two right-of-way areas are being used as extensions of their respective yards by the aforesaid individual Defendants. This situation has given rise to the suit.

Plaintiffs contend that they have a right to have these two private roadways opened and constructed. Since at least six families along with some thirty children now live in Wyckwood Court, Plaintiffs contend that they are being unfairly burdened with traffic and congestion since the majority of the traffic in the subdivision must come down to the end of the ten foot road in order to turn around and get out. They further contend that this excess traffic emanating from the first four lots has caused the ten foot road abutting their lots to fall into disrepair, that it will cost some $700 to repair it, and that they cannot obtain financial assistance from the Defendants in repairing it since, under the restrictions, they will be outvoted four to two. Thus Plaintiffs seek (1) mandatory injunction against the individual Defendants, and also against the Defendant C. Iacono Construction Co. (which constructed houses on and sold Lots 1 and 3 to the Defendants Tauscher and Blanchfield) to require them to construct the other two sixteen foot private roadways, and (2) contribution from the Defendant lot owners toward the cost of repairing the ten foot roadway at their end of the subdivision.

■ As a point of departure, it may be noted that this Court has previously held that where an owner of land lays it out in building lots, makes a plot showing a general building scheme, and sells to various purchasers in accordance therewith, inserting similar covenants in all the deeds, an intent to benefit all the land in the tract and to induce purchases thereby may be inferred, and one grantee may usually enjoin a breach of the restrictions by another grantee who takes with notice. Jackson v. Richards, 26 Del.Ch. 260, 27 A.2d 857 (1942). Such circumstances appear to be present here. In addition, Plaintiffs were the first two purchasers of lots within the subdivision for the purpose of making their residences thereon and consequently they had a right to anticipate that the other two sixteen foot roadways would come into existence as houses were constructed on the remaining four lots in accordance with the recorded plan of development.

■ The Defendant lot owners do not necessarily dispute this and acknowledge that the two rights-of-way between their lots are there for roadway purposes and that Plaintiffs have a common right to use them. They, along with the Defendant C. Iacono Construction Co., dispute, however, that they are under any obligation to construct them. The Defendant lot owners point out that by the terms of the declaration their only obligation, as abutting owners, is to maintain the sixteen foot road-

ways *after* they have been constructed. Since restrictive covenants must be construed in favor of a grantee and the language thereof given its ordinary meaning, Brookside Community, Inc. v. Williams, Del.Ch., 290 A.2d 678 (1972), they argue that it is the clear intention of the covenant that the purchaser of a lot with a newly constructed house thereon has no obligation to construct the private roadway.

In addition, they contend that although the covenants are stated generally to be those running with the land, the specific obligation to construct the roads is in reality a personal covenant of Savarese since he covenanted to do so "at his sole costs and expense". They further argue that since personal covenants do not run with the land, they can be under no obligation as an eventual assignee of Savarese to perform a duty enforceable only against him.

Finally, they contend that even if the covenant is held to be one running with the land, it is an affirmative as opposed to a restrictive covenant and consequently, based on the language of Merchant's Union Trust Co. v. New Philadelphia Graphite Co., 10 Del.Ch. 18, 83 A. 520 (1912), it is not binding on them since Delaware is one of the few jurisdictions in this country in which an affirmative covenant is unenforceable against a subsequent grantee.

## I.

Addressing these arguments in reverse order, it is true that the common law as expressed by the early English decisions made a distinction between affirmative and negative covenants and held that the former were necessarily personal in nature, thus did not touch or concern the land, and consequently were not covenants which would run with the land. 3 Tiffany, Real Property (3rd Ed. 1939) 459. This was acknowledged in Merchant's Union Trust Co. v. Philadelphia Graphite Co., supra, in which the Court went on to indicate that even if the covenants there had been binding on the parties—and it found that they

were not for other reasons—they were "not restrictive in their character, but, in fact, the very reverse". 83 A. 528.

It is obvious, however, that this language was dicta and was not the determining element of the case. Moreover, it was an observation based on an examination of the English and American authorities existing at the time. 83 A. 528. At present only one American jurisdiction adheres to this rule and generally no distinction is now made between negative and affirmative covenants. 3 Tiffany, Real Property (3rd Ed. 1939) 458; 21 C.J.S. Covenants § 69, p. 931; 20 Am.Jur.2d 607, Covenants § 37; 4 Pomeroy, Equity Jurisprudence (5th Ed. 1941) 850. Under the modern view, the primary consideration in deciding whether a covenant runs with the land is whether it is so related to the land as to enhance its value and confer a benefit upon it, rather than whether the covenant is of an affirmative or negative nature. 20 Am.Jur.2d 607, Covenants § 37. This approach is more in keeping with the increased use of covenants and restrictions in the crowded conditions of modern life, and therefore I see no reason to convert the dicta of a bygone era into the dogma of the present when there is no compelling reason to do so. To the extent that Defendants seek a dismissal because the covenant is affirmative, their motion will be denied. This Court is not barred from granting relief against a subsequent grantee for the sole reason that the covenant relied upon requires affirmative action.

As to the contention that Savarese's commitment to construct is personal and for this reason also does not run with the land and is therefore unenforceable against the Defendants, again I cannot agree. This is an action in equity, and equity has never considered itself bound by a determination of whether or not the covenant runs with the land. The genesis of this trend is the leading English case of Tulk v. Moxhay, 2 Phillips 774, 18 L.J.Ch. 83 in which the Court stated "the question

is not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased". In other words, if (1) the covenant attaches an equity to the land and (2) a purchaser takes with notice of it, equity can, in a proper case, charge the conscience of the grantee with the obligation of the covenant whether or not it runs with the land.

As stated in 3 Tiffany, Real Property (3rd Ed. 1939) 481:

". . . we find that in numerous decisions an affirmative agreement in connection with the land has been regarded as within the doctrine, with the effect that a purchaser from the promisor with notice of such an agreement, though he may not be personally liable for its nonperformance, takes the land subject to the possibility that a court of equity will enforce its performance, or reparation for its nonperformance, by a decree in reference to the land."

It is similarly stated as follows at 4 Pomeroy, Equity Jurisprudence (5th Ed. 1941) 847, 848:

"It makes no difference whatever, with respect to this equitable liability, and this right to enforce the covenant in equity, whether the covenant is or is not one which in law 'runs with the land'. Subsequent owners deriving title under deeds containing such covenants would, of course, have constructive notice thereof."

Here the complaint alleges a covenant to construct roadways which are intended for the common use of all grantees of the covenantor. It is certainly arguable that the benefit of the covenant "touches and concerns" all lots in the subdivision, including those owned by Plaintiffs. All grantees had constructive notice of this covenant by virtue of the reference in their deeds. Some Defendants had actual notice before

taking title, according to the allegations. In theory, it would seem that the Defendants would have no right to take with notice of this situation, waive construction of the roadways between their properties, use the rights-of-way for their own purposes and thereby deprive Plaintiffs of their right of common usage.

The standards applicable to a motion to dismiss for failure to state a claim upon which relief may be granted have been set forth in several decisions of this Court. Morgan v. Wells, 32 Del.Ch. 108, 80 A.2d 504 (1951); Cohen v. Mayor of Wilmington, 34 Del.Ch. 39, 99 A.2d 393 (1953); Danby v. Osteopathic Hospital, 34 Del.Ch. 172, 101 A.2d 308 (1953), affirmed 34 Del. Ch. 427, 104 A.2d 903. As stated in Morgan v. Wells, supra,

"A complaint, however, will not be dismissed for failure to state a claim unless it appears to a certainty that under no set of facts which could be proved to support the claim asserted would plaintiff be entitled to relief."

For the foregoing reasons, it is obvious that Defendants are not entitled to a dismissal for the sole reason that the covenant in question may not be one which, at law, runs with the land. Whether or not the facts may impose responsibility for construction upon any or all of them is another matter. However, I cannot say to a certainty from the language of the complaint that the Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief.

II.

In the alternative Defendants seek a dismissal because it is claimed that Plaintiffs have an adequate remedy at law in damages if their allegations are correct, and consequently this Court lacks jurisdiction. However, the intent of the action is not to seek contribution toward the costs of constructing the roadways but rather to compel the Defendants to perform what

Plaintiffs contend is their obligation, namely, to construct the roadways between their respective properties. If the obligation is there, then Plaintiffs should not be compelled to attempt construction of the roadways at their own expense between the property lines of hostile parties and then seek recovery of their expenditures at law. As stated at 4 Pomeroy, Equity Jurisprudence (5th Ed. 1941) 942,

> "The injunction in this class of cases is granted almost as a matter of course upon a breach of the covenant. The amount of damages, and even the fact that plaintiff has sustained *any* pecuniary damages, are wholly immaterial."

### III.

■ Thirdly, Defendants seek dismissal on the theory that the complaint, on its face, shows that Plaintiffs have been guilty of laches. From the allegations it appears that the Defendants Blanchfield took title to Lot 3 on March 7, 1973 and the Defendants Tauscher took title to Lot 1 on April 17, 1973 thus, according to the restrictions, giving rise to the obligation on the part of someone to construct the 16 foot roadways at or about those dates. Paragraph 18 alleges that they have been endeavoring to have the roadways constructed ever since work on the Blanchfield and Tauscher houses was in progress and that several meetings have been held among the parties concerning the situation. The complaint was filed on October 11, 1973. I find no laches from these bare facts.

### IV.

Finally, Defendants seek dismissal under Rule 19 for the failure of the Plaintiffs to join an indispensable party, namely, Joseph Savarese. They point out that Plaintiffs have sued C. Iacono Construction Co. which was a predecessor in title to the Defendants Tauscher and Blanchfield, but that they have not joined any other prior grantor. They contend that all other prior grantors of the lot owners, and in particular Savarese, must be joined if complete relief is to be accorded the present parties. (Apparently another party, Abbonizio, was the builder and grantor of Plaintiffs MacDonald and Defendants DelCollo.) It appears, however, that all prior grantors, including Savarese, are nonresidents and thus are not subject to service of process in this jurisdiction.

Rule 19(a) provides *inter alia* that a person "who is subject to service of process" shall be joined as a party if (1) in his absence complete relief cannot be accorded those already parties, or (2) if he is so situated that the disposition of the action in his absence may either impair his ability to protect his own interests or leave any of the persons already parties subject to substantial risks of incurring multiple or inconsistent obligations by reason of his claimed interest.

■ Rule 19(b) further provides that if such a person cannot be made a party the Court must determine in equity and good conscience if the action should proceed among the parties before it or should be dismissed due to the absence of an indispensable party. The factors to be considered in making this determination are (1) the extent to which a judgment entered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which any such prejudice may be lessened or avoided by the shaping of relief or protective provisions in a judgment; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether Plaintiffs will have an adequate remedy if the action is dismissed for nonjoinder. Such a determination lies within the discretion of the Court according to the circumstances of each case. Subers v. Continental Securities Co., 12 Del.Ch. 236, 111 A. 433 (1920).

■ Because of factors previously set forth, I cannot determine at this point that Savarese is an indispensable party. Under the restrictions, the obligation to construct

the two sixteen foot roadways did not arise until the completion of the Tauscher house on Lot 1 and the Blanchfield house on Lot 3. Defendant C. Iacono Construction Co., was the grantor of these two lots and was the successor in title to Savarese at the time the obligation matured. All parties had constructive, if not actual, notice that the obligation would arise at that time and that Saverese was not in the picture. If Savarese were subject to service of process, I have no question but that it would be proper to join him as a party defendant, either by the Plaintiffs pursuant to Rule 19 or by the Defendants pursuant to Rule 14. However, should the facts bear out the Plaintiff's theory of the case, a judgment rendered in his absence could afford adequate relief. More importantly, if the action be dismissed because Savarese is not a party, and if he is not subject to service of process, then for all practical purposes the Plaintiffs will be rendered without an adequate remedy and the roadways will presumably never come into existence even though they are called for on the plot and all parties acknowledge that they should be constructed under the terms of the restrictions. Therefore, I cannot hold in good conscience that the absence of Savarese requires a dismissal of the action.

I recognize that the Defendants Ferrigan have advanced a separate argument that since they purchased this property in August 1973 from a prior owner and resident of Lot 4, any breach of an obligation to construct necessarily occurred prior to their taking title and thus cannot be attributable to them. However, at this juncture, I feel that the reasons for denying the motion to dismiss as set forth earlier apply to them as well.

The motions of the Defendants to dismiss are denied. Counsel for Plaintiffs is directed to present the appropriate order, on notice.